Judge Marshall
delivered the Opinion of the Court.
In March, 1814, Edmund Singleton departed this life, after having duly published his last will, in which he appointed his wife, Margaret Singleton, executrix, together with two others therein named as executors, Mrs.Singleton alone undertook the execution of the will, and having intermarried with John Hawkins, in October, 1815, dower was immediately afterwards assigned to them, in the land and slaves of the decedent; and the entire business of the estate was thenceforth conducted by Hawkins, until his death in July, 1823.
In December, 1817, the first partial settlement of the executorial accounts was made with County Court commissioners; in which, after allowing one third of the entire personalty as the widow’s portion, a large balance appeared against the executors. Two other settlements were made during the life of Hawkins (in September, 1820, and December, 1822), and a fourth in January, 1824, about six months after his death. The balance in hand at the time of the first settlement, not having been afterwards brought into the account, a balance appeared against the heirs, on the third settlement, exceeding two thousand dollars, which, on the last settlement, was reduced to about eleven hundred dollars.
In April, 1824, administration of the estate of John Hawkins having been previously granted to his sons, Thomas and John Hawkins, this suit was brought for a settlement and distribution of Singleton’s estate, by a part of his heirs and devisees, against Margaret Hawkins, his executrix, and Thomas and John Hawkins, administrators of John Hawkins, deceased, and Polly *88 Hawkins, one of the heirs and devisees of Singleton, who had intermarried with the said Thomas.
The bill surcharges the accounts, as allowed in the various settlements; alleging that the charges against the executors were too small, and the credits allowed them too large; that they had improperly retained and been allowed, as the widow’s share, one third of the entire personalty, before the debts were paid, whereby a large portion of the debts were thrown upon the rent and hire of the land and slaves allotted to the heirs; that they had not been, and should be, charged with the rent of land and hire of slaves for the years 1814 and 1815; that they had loaned out the money of the estate at interest, and should be charged with interest; and that more than an equal third of the land and negroes was allotted, and has been since held, as the widow’s dower. And the complainants pray for a re-allotment of dower, an account of rents, fee. on the excess; a re-adjustment of the executorial accounts, and other relief appropriate to the allegations of the bill.
The answers require proof of the material allegations of the bill, and rely upon the settlements and other acts done by authority of the County Court. Evidence was taken upon the matters in issue, and several auditors were successively appointed, who made various reports presenting different balances. The last report, which is the most satisfactory, exhibits two statements of the executorial accounts. The first, being merely a correction of the several settlements, upon the data therein furnished, shows a balance of two thousand five hundred and sixty-seven dollars and fifty-eight cents against the executor, without any charge of interest. The other, founded in part upon the same data, and in part upon the proof of additional charges made in this soft, exhibited a balance against them of three thousand two hundred and seventy-one dollars and six cents, without interest. This balance was adopted by the Circuit Court, as correct, and the entire sum decreed against the administrators of Hawkins.
To reverse this decree, cross writs of error are pros *89 ecuted, by the administrators of Hawkins, on the one side, and the complainants on the other.
An executor having died, his adm’rs are sued by the distributees, for the estate left in his hands; one of the adm’rs having intermarried with one of the distributees (deft) her share should be deducted from from the aggregate, and the decree, in. favor of the others, should be for the balance only.
After an allotment of dower, a large part of the land descended, was recovered from the heirs, in a suit instituted against their ancestor: the widow cannot retain the third which had been allotted to her—none of which was included in the recovery; there must be a re-allotment; and one third of the land saved only, must be assigned to her.
The administrators allege, that the sum decreed is too large; that it was erroneous to decree against them, the whole amount due to the heirs, without making the executrix and her third husband., Samuel Craig, with whom she had intermarried during the pendency of the suit, and who was afterwards made a defendant, liable to some extent; and that a deduction should have been made from the sum decreed, on account of the interest of Thomas Hawkins in right of his wife.
The complainants allege, that the balance found in their favor by the auditor, and decreed by the Court, is too small, and point out various supposed errors and omissions in the report (which formed the subject of exceptions before the Chancellor,) and especially, the omission to charge rent and hire for the years 1814 and 1815.
They also assign for error, that Craig and wife were not made responsible to some extent, and that there was no re-allotment of dower, and no decree for rents upon the excess.
It is evident that, whatever may be the true balance in favor of the Heirs, Thomas Hawkins and wife are entitled to a portion of it; and the decree is consequently erroneous in not having ascertained that portion, and provided for it, by deducting it from the amount decreed to the complainants.
The other objections taken by the administrators, will be involved in the general investigation, which must necessarily take, place upon the errors assigned by the complainants, and of which, we now proceed to consider such as seem to require notice.
I. The original allotment of dower, both in the land and slaves, seems to have been quite advantageous to the dowress; but we do not find sufficient grounds for disturbing it as to the slaves; nor should we as to the land, if the tract remaining to the heirs had been left entire. *90 But it appears that, as early as 1809, a suit had been commenced by Lewis’ heirs against Singleton and others, for a part of this land, in which an interlocutory decree had been rendered prior to Singleton’s death, and which finally resulted, about the year 1820, in the loss of several hundred acres of the tract on which Singleton had died, and out of which his widow had been endowed. This loss fell entirely upon the part which had been assigned to the heirs. And there was, moreover, a decree against the estate, for a balance of four thousand five hundred and fifty-seven dollars and fifty cents, for deterioration of soil and rents, from 1809, to the end of the year 1820, which was paid by the executors, and credited to them, before the death of Hawkins. Upon this state of facts, it is a clear principle of equity, that the widow was not entitled to retain, as her dower, one third of the entire tract, after a fourth or a third of it had been lost. It would be just as reasonable to suppose that, she would be entitled to retain one third of the whole after the remaining two thirds had been lost by an adverse claim. The heirs, as between them and the widow, are as much entitled to two thirds of the land of which the ancestor died seized, as the widow is to one third.
An adversary claimant recovers part of an estate descended, and obtains also, a decree against the heirs for rents dower of the whole tract had been assigned, no part of which was included in the recovery: but, as the widow was only entitled to dower of what was saved, and had, in the mean time, enjoyed the use of the surplus assigned to her, for the rents of which, the heirs are compelled to pay—she should be deemed, to that extent, a trustee for them, & thus far liable; and this liability devolved on her husband, so far as the rents &c. were received before his death; from that event, the dowress, and her 3d husband, are liable—the amounts to be ascertained by taking an account.
*90 As the heirs were made liable for rents upon the lost land, during the whole time it was held by or for them— that is, from the close of the year 1815, when the widow’s dower was assigned, the case is, in effect as if they had not had the use of the lost land at all; and as to them, it may be considered as lost before the assignment of dower: while the widow has enjoyed the issues and profits of one third of the whole tract during the entire period. To remedy this inequality, there should have been a re-assignment or re-admeasurement of dower, giving to the dowress one third of the tract exclusive of the lost land. And the dowress and her successive husbands, who have enjoyed the dower land in her right, should be held accountable to the heirs, as trustees, for the reasonable annual value, during the respective periods of their enjoyment of the excess of the dower as originally assigned, beyond the proper quantity ascer *91 tained upon the re-admeasurement. Upon this principle an account should be raised, in favor of the heirs of Singleton, and against the administrators of John Hawkins, deceased, for the rents upon the excess of dower, from the close of the year 1815, to the end of the year 1823. And as the liability of the dowress for her subsequent reception of these rents and profits, during her second widowhood, devolved upon her third husband, Samuel H. Craig, who is also liable for his reception of them, since his marriage, a similar account should be raised against them — commencing with the year 1824, and terminating when the heirs shall be let in to possession of the excess of the dower. But this assessment will form no part of the executorial accounts.
A suit is instituted for land; five years afterwards, the def't dies, & six years after that, a decree goes against his heirs for the land, and for a large sum for rents: so much of this decree, as is equal to the rents & c. accruing during the life of the original def't, must be paid out of his personal estate; the residue must constitute a charge upon the land, and, upon those who took the rents & c. after the death of the original def't—each for his due proportion, according to the quantity the of land held by him, and the time he held it.
The amount of rents and profits, above the improvements, having been ascertained, by a commissioner, for the whole term — an apportionment of an equal part to each year, may be sufficiently accurate, for the adjustment, as above.
The distributable part of a decedent’s personal estate is what is left after the payment of all his debts— one third of which residue belongs to the widow, as dower.
Another question arising upon the facts which have been stated, is, upon what fund shall the amount decreed against the estate, for rent &c. of the lost land, be thrown for payment; or out of what fund shall the executors be deemed to have paid it?
As to so much of the rents &c. as is decreed up to the death of Singleton, there can be no doubt that it should be a charge upon the personalty into which the issues and profits of the land may be presumed to have gone. The rent &c. accruing after his death, ought to have been paid out of the land itself, and should be chargeable to those who received its issues and profits: that is, to the widow for the year 1814 and 1815, during which she received the profits, and to the heirs for the remaining period, during which the rents were received for them.
From these principles, it follows that, in ascertaining the widow’s third of the personalty, only so much of the decree as covers the rents, &c. charged for the years previous to the death of Singleton, should be taken into the estimate, as a part of the decedent’s debts, and should, together with other debts, be subtracted from the total amount of the personalty, exclusive of the rent *92 of land and hire of slaves after the allotment of dower: and doing which, the remainder will show the distributable fund, one third of which should be credited in the executorial accounts, as the widow’s third.
A widow has a right (under the statute) to occupy, and take the profits of her deceased husband’s mansion house and farm, until dower is allotted to her. But—
Where a man dies after the 1st of March,his servants and slaves are to be kept or the farm to the end of the current year, & the crop of that year, after paying certain expenses, will be assets in the hands of the ex’or. And—
A further consequence is that, unless the widow has, in some way, rendered to the estate the profits of the lost land for the years 1814 and 1815, or the executors have, in some form, been charged therewith, they are not entitled to a credit for the payment of so much of the decree as covers the rents of those two years, but only for the residue of it. If, however, they have, in any form, rendered the profits of those years to the estate, or are charged therewith, then they may be properly credited, as they have been, with the payment of the whole decree. Whether they have substantially done so or not, will be hereafter considered.
In apportioning the amount of the decree, as now suggested, it will be a sufficient approximation to truth, to consider the sums assessed by the commissioners, for rents, waste and deterioration of soil, and also the estimated value of improvements upon the lost land, as equally distributed through each of the years included in the estimate, except so far as the report of the commissioners on which the decree is founded, shows it to be otherwise.
II. No allotment of dower having been made until the close of the year 1815, up to which time Mrs. Singleton had possession of all’ the land and negroes — it is contended that she should be charged with 'two thirds of their annual value, from the death of Singleton up to that time. But it has been repeatedly decided by this Court that, under the provisions of the act of 1795 (1 Stat. Law, 573,) the widow is entitled to occupy the mansion house and farm of her deceased husband until her dower is assigned — subject, however, to the limitaation imposed by the 45th section of the act of 1797 (1 Stat. Law, 667,) that if the husband die after the first of March, the prop of that year, raised upon the farm by the labor of his slaves, shall after certain deductions therein directed, be assets in the hands of the executor. Chaplin &c. vs. Simmons’ Heirs, 7 Mon. 338; White vs. *93 Clarke, Ib. 642; Stewart's Lessee vs. Stewart, 3 J. J. Marsh. 48.
A widow being her husband's ex'x, & remaining in possession of the homestead farm, will, where the husband died after the first of March, he liable for the proceeds of the crop for that year, but not afterwards, until her dower is assigned. But— For the hire of the slaves-which she has no right to, (except as above she will be accountable, if she retains them.
Conclusions upon facts, that the executors have accounted for certain rents & c.
As Singleton died after the first of March, and his widow, the executrix, remained in possession of the land and slaves, she must be held responsible for the crop which was the joint product of the land and slaves for the first year, under the privilege of exemption from rent, (which, however, we do not suppose to be applicable to all possible cases,) she is not responsible for rent or profits of the land, for the succeeding years, except for the rent or the profits of the lost land as already explained, But having no right, as widow, to retain the possession or use of the slaves until her dower was assigned, she must be held accountable for their value for the second year (1815) — their value for the first year being, according to the statutory provision above cited, merged in the value of that year’s crop.
With regard to the crop of the first year, and so much of that of the second year, as may be equivalent to the rent of the lost land for the same period, we are inclined to think that, although not formally stated in any of the accounts rendered by the executors, the estate has received substantially the benefit of them: first — in the price of articles produced on the farm, and sold at the regular executorial sales: second — in the support of a very large stock of horses, cattle &c. sold for the benefit of the estate, and a part of which it may be inferred from the account of the second sale, made in November, 1815, was kept till that time; third — in the support, until the assignment of dower, of such of the slaves as were unable to maintain themselves; fourth — in the price of certain articles, the produce of the farm, which were sold privately, and not charged to the executors, in their settlements with the County Court, but proved by the heirs in this suit, and charged in the account on which the decree is founded; and, fifth — in several sums received for rent and proved in the same manner.
The first year’s crop, so far as the executrix was responsible for it, is certainly comprised in so much of these items as is applicable to that year; and we think the rents received for such part of the land as was rent *94 ed the second year, and other items applicable to that year, may, without injustice to either party, be deemed an equivalent for the rent of the lost land for that year, as in favor of the successful claimant. We are therefore of opinion, that no further charge is to be made on account of the occupancy of the land for the years 1814 and 1815; and that the executors are entitled to the credit which they have received, for the entire sum decreed against the estate for rents &c. as above stated.
The hire of the slaves for 1815, has not been included in the chargeable to the deceased ex’or’s required to pay debts — the to ⅔ the widow, to ⅓ of the amount.
Corrections required in the accounts, as stated by the auditor.
But as the estate has received no equivalent for the hire of the slaves for the year 1815, and no charge was made therefor, either in their settlements with the Bounty Court, or in the decree rendered in this suit, (the omission of which, if there were no other error, would a proper ground of reversal,) it will be necessary to ascertain the value of their hire for that year. As the personal estate was more than sufficient to discharge the debts of the decedent, without resorting to the slaves or their hire, one third of the hire for 1815, must be allowed to the widow, and the remaining two thirds will be a proper charge against the executors.
III. Upon inspecting the auditor’s reports, on which the decree is based, and comparing it with the vouchers and other proofs, we are of opinion, that the items of the account, as therein stated, showing the balance which was decreed, are substantially correct, and may be hereafter adopted, except in the following particulars: —
First — The sum credited as the widow’s third of the personalty, was not ascertained in the manner above pointed out as correct, and is too small.
Second. The hire of the slaves for the year 1815, which is entirely omitted, should be introduced.
Third. In making out the accounts, as hereinafter directed, the commission of five per cent. should be allowed upon the whole sum charged in each account, exclusive of interest.
Fourth. The question of interest will be hereafter disposed of.
The auditor properly rejected one of the charges, for. hire of slaves for the year 1817, as that item was twice charged in the two first settlement with the County
An ex’x married, and her husband assumed the management of the decedent’s estate; the first settlement of executorial acc’ts, was made by him, soon after his marriage; in the acc’ts then settled, he made no discrimination between sums received and paid by his wife before their marriage, and those received & paid by him afterwards; as long as he lived all the ex’or’s business was transacted by him; he made two other settlements—the last not long before his death: held, upon these facts, that his estate, (he being dead) is chargeable with all the liabilities of the ex’rs, up to the time of the last settlement made by him, & with all items which ought to have been included in either of those settlements, but were omitted.
Court. We are also of opinion that, the proper charges, as far as they can now be ascertained, are made for the horses received from Turpin, &c. As it is to be inferred that many of them were sold at the public sale of 1815, and that others were sold at the private sales proved in this cause.
IV. The account which has been under review, was intended to embrace, and when properly adjusted will embrace all the executorial transactions and liabilities, from the death of Singleton, in 1814, to the fourth settlement, made in January, 1824, shortly after the death of Hawkins, the husband of the executrix. And a question is made, whether the entire balance should be decreed, as it was by the Circuit Court, against the administrators of Hawkins. As to so much of the balance as arises upon improper calculation of the debits and credits, as allowed in the three first settlements with the County Court, we have no doubt it. is properly chargeable against Hawkins’ estate. He had intermarried with the executrix, and was in effect the executor, some time before the first settlement was made. It was, in fact, his settlement, and the balance then existing against the executors, amounting to several thousand dollars, must be considered as being in his hands. It appears, too, that the proceeds of the regular executorial sales were generally paid to him, and that the papers evidencing debts due to the estate, were in his possession; and besides, he has made no discrimination, as he should have done, showing what part of the estate came to his hands.
The two succeeding settlements were also made by Hawkins, as the acting executor, and the charges therein, being for actual receipts by him, are properly charges against him. We are also of opinion, that the charges omitted in these settlements, and now established by proof in this suit, all of which appeal” to be applicable to the period antecedent to the death of Hawkins, should be charged against him. A considerable portion of the money to which these charges relate, appears to have been received by him, after his marriage, and of that which had been previously received by the executrix, a large part is proved to have been appropriated to the dis *96 charge of debts, for the payment of which the account against Hawkins is credited, and the small residuum may be presumed to have been appropriated in the same way, or to have come to the hands of Hawkins upon his marriage, which occurred shortly afterwards. And in either event, it should be charged to him.
An ex’or who became so by marrying an executrix in October, is presumed to have received the hire of the slaves, for the then current year and his estate is held to be chargeable with it -, not because of a liability of the wife devolved upon him by the marriage, but upon the presumption that he received the hire and was personally accountable. His omission to keep an account showing what was received by the wife before their marriage, and what by him justifies the charge against his estate. Her liability existing before the marriage would survive against her after her husband’s death, & devolve upon her next husband.
The value of the hire of the slaves for the year 1815, which is yet to be taken into the account, presents greater difficulties. But, as Hawkins intermarried with the executrix in October of that year, it may be presumed that he received the hire of such of the slaves as were actually hired in that year, and that he also received the principal benefit, and probably the net profits of the labor of such of them as labored on the farm. It seems just, therefore, that this item, also, should be carried to the account against his representatives. We do not consider this charge as a debt of Mrs. Singleton, devolving upon her second husband merely as such. If it were so, it would have survived against her, upon his death, and, upon her subsequent marriage, would have devolved upon her third husband, Craig. We do not consider Hawkins liable for the hire of 1815, because Mrs. Singleton had received and used it, and he afterwards became her husband. But because, being in right of his wife, the executor of Singleton and trustee for his heirs, he himself afterwards received the profits of their estate. The obligation to account for what he thus received, was immediate and not derivative. The failure to account was his, and the consequent liability Was personal to himself, and on his death devolved on his representatives. If the charge now to be made should exceed the value of what he thus received — which it cannot do to any great extent — the discrimination, which is now impossible, should have been made by him; and the consequences of his failure-must be borne by his estate.
From this view of the subject, it follows that the entire executorial accounts up to, and including, the third settlement, with all the proper charges and credits arising before that settlement, should be considered as an account with John Hawkins, as executor; and for the bal *97 ance appearing against him on this account, his representatives are liable,
Rents and negro-hire, accruing to a decedent’s estate for the year in which the ex’or, who was.such in right of his wife only, died, are presumed to have been received — notty him, but by the ex’x, after his death; and are chargeable, not to his estate, but to her — and her subsequent husband.
For any balance in the hands of the ex’or and ex’x; at the time of his death, his estate is liable in the first instance; yet she— and her subsequent husband-are also, ultimately liable for it.
A bill charges, that an ex'or used the funds, and received interest upon them; the ans'r without noticing the charge denies all allegagations not expressly admitted, and the proof is slight. But, as it appears that, the ex’or, upon a settlement, claimed a balance against the heirs, the presumption is, that he used the funds which he considered as his own, and his estate (he being dead,) is liable for interest on the balance, from the date of the settlement.
But, as Hawkins died in July, 1823, and the fourth settlement, embracing only the transaction? of 1823, was made in January, 1824, with the executrix herself, the charges in that settlement, consisting almost entirely of rent and hire for 1823, not due till the close of the year, fire to be taken as charges against her, and, together with the credits properly applicable to the year 1823, must form a separate account against her, for the balance of which she and her present husband are exclusively liable. They are, also, ultimately responsible^ and should be made so, by the decree, for the balance which may appear in that part of the account which is directed to be charged against Hawkins and his representatives. The acts and omissions of Hawkins, while he acted as executor in right of his wife, are attributable to the executrix, in whose right, and for whom, he acted, arid the law holds her liable for them. Carrol &c. vs. Connell, 2 J. J. Mar. 199. But it seems to bo equitable that the liability should in the first instance be thrown upon the husband who did the wrong, or received the advantages.
V. The only remaining question which we shall notice, is, whether interest should be charged upon these Accounts; or either of them. The bill alleges that Hawkins, in his lifetime, loaned the money of the estate, and made high interest on it. The answers, without noticing this particular statement, deny all allegations not admitted, and the direct proof is very slight. But, as it is evident that, at the date of the third settlement, there was a large sum in the hands of Hawkins, and as, in consequence of his not charging himself with that sum a large balance was exhibited against the heirs, on the third settlement, we think these facts afford sufficient evidence of his having, from that time at least, used arid claimed as his own, the sum then in his' hands, but not brought into the account — being the whole balance appearing against him upon a fair adjustment, as above directed, of the debits and credits up to that time. And *98 on this ground, and because he appears to have made no further disbursements of any part of this sum for the benefit of the estate, we are of opinion that intesest upon the balance of this account, from the date of the third settlement, should be decreed against his administrator.
An ex’x claimed a balance as due her, upon a settlement; which was tantamount to refusing to pay over: held therefore, that she should be charged with interest, from the time of that settlement, on the balance actually in her hands.
The widow is not chargeable with interest upon the rents, for which she is required to account, because too much land was allotted to her for dower. But is entitled to pay for improvements.
It appears that, upon the fourth settlement, the executrix claimed and obtained the benefit of the balance standing against the heirs upon the third settlement; the result of which was, that instead of a balance against her, amounting to nearly the whole of the receipts of the year 1823, as charged, there appeared a balance in her favor and against the heirs, of more than a thousand dollars—the benefit of which is claimed by the defendants in this suit—which was brought within three months after the settlement, On these, facts, which must be deemed equivalent to a refusal to pay over to the heirs, the receipts of the year 1823, remaining in her hands, and as in fact an appropriation of them to other uses than those of the estate, we are of opinion that interest should be charged against her, from the date of the fourth settlement, upon the balance of the account to be taken, as before directed, for the year 1823. And that so far as she is made liable for the balance against John Hawkins, as executor, interest should be charged thereon against her, from the same time.
The accounts for rents upon the excess of dower land, should not be charged with interest, but should be credited with the value at the time of the assessment of such improvements as were made during the periods to which the accounts respectively apply.
There being, according to the view we have taken, various errors in the decree and proceedings on which it was based, to the prejudice of both parties, the decree is therefore reversed, for both; and the cause is remanded, with directions to cause a re-admeasurement of the dower to be made, and an assessment of rents &c. on the excess, in the manner pointed out in this opinion; also, to have an account taken of the value of the hire of the slaves of the decedent for the, year 1815, and a re-adjustment of the executorial accounts, as above directed; and to decree to the complainants the several-balances- *99 which may be found in favor of the heirs and devisees of Singleton, with interest as above directed, to be paid by the several defendants according to their respective liabilities, except such portion thereof as any of the defendants may be entitled to as heir or devisee, or in right of an heir or devisee: such portion to be ascertained and reserved in the decree to the person or persons thereto entitled.