## Shields' Administrators v. Chesser, et al.

(Decided December 17, 1915.)

### Appeal from Nelson Circuit Court.

1. Judgment—Collateral Attack.—A judgment rendered by a court having jurisdiction of the subject matter and the parties cannot be collaterally assailed by the parties to the suit or their privies.

2. Judgment—Collateral Attack.—A collateral attack upon a judgment is one which is not directly made in a proper proceeding brought for the purpose of cancellling, annulling or setting aside the judgment.

3. Judgment—Striking Action From Docket.—Where a plaintiff, who has brought a suit and obtained an attachment, and then dies, and his personal representatives fail, within the time provided by law, to have the suit revived, and the court orders it stricken from the docket, it has the effect of an adjudication, that the attachment was sued out without good cause, and is binding upon the privies of the decedent.

4. Abatement and Revival—Personal Representatives—Revival of Action by.—Where a plaintiff dies, his personal representatives have one year, from the time at which they might have had it revived, to have it revived in their names.

5. Damages—Measure of Recovery for Conversion of Personal Property.—The measure of recovery for the conversion of personal property is the reasonable market value of the property at the time of the conversion, with interest thereon from the time of the conversion.

6. Landlord and Tenant—Attachment—Damages.—Section 2312, Kentucky Statutes, providing for the recovery of double damages for the seizure of property of a tenant, without good cause, and double value of the property, if it be sold, is a highly penal statute, and its application will not be extended beyond the letter of its terms.

7. Landlord and Tenant—Attachment—Damages.—The sale of personal property under an attachment mentioned in Section 2312 Kentucky Statutes, contemplates a sale in accordance with the provisions of the Code and Statutes upon that subject, and not a mere conversion of the property.

NAT W. HALSTEAD and MORGAN YEWELL for appellants.

G. S. & J. A. FULTON and N. H. FULTON for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This suit was brought by the appellees, Frank Chesser and Joe Ed Chesser, against the administrators of the estate of Dr. A. M. Shields, deceased. The appellees were tenants of the decedent upon a farm owned by him

during the year 1910, and the controversy, here, grew out of their relations as tenants and landlord. The appellees claimed that the contract between them and decedent was, that they would cultivate a crop of corn and a crop of tobacco upon decedent's farm during the year 1910, and that decedent was to furnish all the necessary implements, machinery, work stock, etc. necessary for the cultivation and harvesting of the crops, while the appellees were to perform all the labor necessary and proper in the planting, cultivating and gathering of the crops, and were to have for their services one-third of the corn and one-half of the tobacco grown, at the barn of decedent, after the tobacco had all been stripped and bulked by the appellees. The appellants, the personal representatives of the decedent, denied that the terms of the contract were as set out by the appellees in their petition, so far as the appellees being entitled to have one-half of the tobacco, at the barn of decedent, after it was stripped, but they were to strip the tobacco, put it in hogsheads and deliver it at a depot for shipment, at their own expense, and thereafter the decedent and appellees were to bear the expenses of its shipment to market and sale equally, and divide the proceeds equally, between them.

The appellees claimed that after they had cultivated and grown the corn and tobacco and had cut and put seven acres of the tobacco in the barn of decedent, and about one hundred and twenty-five bushels of their own part of the corn in the barn, and were proceeding to strip the tobacco, as the season would admit, the decedent, claiming to have made advancements to them as tenants in the making of the crops and for which they owed him, filed a suit in equity in the Nelson circuit court against them, and, without good cause, had an attachment issued and put in the hands of the sheriff and levied upon the corn and tobacco in the barn, which they alleged was done on the 10th day of January, 1911, and that under the attachment, decedent, through the sheriff, took possession of the corn and tobacco and took it from the control of the appellees and thereafter either appropriated all of it to his own use or that it was wasted, sold and destroyed, and that the appellees had received no part of it; that the corn was of the value of $50.00 and the appellees' one-half of the tobacco taken under the attachment was of the reasonable value of $450.00; that after the institution of the suit the decedent died, on the 29th

day of September, 1911, and on the 8th day of October, thereafter, the appellants were appointed and qualified as the administrators of his estate, and that at the February term, 1913, of the Nelson circuit court, the suit, in which the attachment was issued, was, by an order of the court, dismissed and the attachment discharged, and that by reason of the loss of the corn and tobacco taken under the attachment, that under the statute made and provided in such cases they were entitled to recover double the value of it and double the damages suffered by the seizure of it, and specifically plead and relied upon the statute.

The appellants, by their answer, admitted the institution of the suit and the procurement of the attachment and its levy upon all of the tobacco and the taking of the tobacco and corn by the sheriff, but denied that there was as much as one hundred and twenty-five bushels of the corn. They, also, denied that the attachment was sued out, without good cause, or, that the advancements claimed in the suit were pretended, but alleged that the advancements claimed were real and the decedent had a lien upon the corn and tobacco to secure the payment of the advancements and that the appellees were moving their crops from the premises without the payment of the advancements at the time the attachment was issued and levied. They, also, admitted that the suit in which the attachment was issued, was, by an order of the court, dismissed and the attachment discharged at the time alleged in the petition, but averred that the reason for the entry of such order was that the suit, after the death of the decedent, had remained upon the docket, without revivor, in the names of the appellants, until after the time had elapsed within which, under the law, a revivor could be had, without the consent of both parties, and that the order dismissing the suit and discharging the attachment was illegal, unauthorized, and void. The other allegations of the petition were traversed. There were other issues made in the pleadings, but they were determined by the court adversely to the appellees and are not before us for review. The allegations of the appellants as to the terms of the contract between appellees and decedent were not denied. The court sustained a demurrer to so much of the answer of the appellants as claimed that the decedent had a lien upon the corn and tobacco levied upon to secure the advance-

ments which he claimed, and, also, sustained a motion to strike from the answer the allegation that the order of the court dismissing the suit and discharging the attachment was illegal, unauthorized and void. The appellants excepted to these rulings of the court.

The trial resulted in a verdict of the jury in favor of the appellees for the sum of $400.00. The appellees moved the court to render a judgment in their favor upon the verdict of the jury for the sum of $800.00, to which the appellants objected, but the court overruled the objection and rendered a judgment against the appellants for twice the amount of the verdict of the jury, to which appellants excepted.

The appellants filed grounds and moved the court to grant them a new trial, but this motion, the court overruled.

It should be stated that at the conclusion of the evidence the appellants moved the court to instruct the jury peremptorily to find a verdict for them, which the court overruled.

The appellants insist that the judgment of the court should be reversed:

First: Because of the failure of the court to properly instruct the jury, and because the court misinstructed the jury.

Second: Because the court erred in the admission of evidence prejudicial to the appellants and over their objection, and to which they excepted at the time.

Third: Because the court erred in rendering a judgment for double the sum for which the jury returned a verdict for the appellees.

The court permitted the appellees to introduce parol evidence upon the trial as to the amount and value of the corn and tobacco, and its value at the time it was taken under the attachment. The appellants insist that it was error for the court to permit parol proof of the amount of tobacco and corn taken under the attachment, and the time of the levy, when the order of attachment was in existence and was the best evidence of these things. It should be borne in mind, however, that appellants admit, by their answer, that decedent sued out the attachment and caused it to be levied upon all of the tobacco and some part of the corn, and only denied that it was levied upon one hundred and twenty-five bushels of the corn, as alleged in the petition. Under

the well known rule of pleading, that it should be construed most strictly against the pleader, the denial of the answer that one hundred and twenty-five bushels of the 'corn was levied upon, was an admission that the amount levied upon was the smallest amount less than one hundred and twenty-five bushels. The petition alleged that the attachment, was levied upon the 10th day of January, 1913, and this allegation was admitted, in that it was not denied by the answer. There was some conflict in the evidence as to the number of acres of tobacco which had been cut and put in the barn of decedent and upon which the attachment was levied. The appellants admitted by their answer that the entire tobacco crop was seized under the attachment, while the appellees insisted that the tobacco crop amounted to twelve acres and that only seven acres of it had been cut and put in the barn and seized under the attachment. Parol evidence conducing to minimize the liability of the appellants was certainly not prejudicial to them. It was competent to show by parol evidence the value of the property taken under the attachment, as the return of the officer on the attachment would not and could not show its value beyond his mere opinion, and there is no requirement under the law that the officer, in his return, should show the value of the articles levied upon by him under the attachment.

Hence there was substantially no issue raised by the pleadings as to the levy of the attachment and the quantity of tobacco and corn seized under it. The only issue presented was as to whether or not the attachment was sued out and the property seized without good cause. If the issue had been as to whether the attachment had been issued and levied, at all, then the affirmative of such issue would have to be sustained by the exhibition of the original order of attachment with the return of the officer thereon, if in existence, because of the well known rule that the contents of a writing can only be proven by the writing itself, if it is within the power of the party to produce it, as being the best evidence possible as to its contents. There was, however, no issue made as to the issual and levy of the attachment, nor as to the time of its levy, nor as to the property upon which it was levied, and it was unnecessary to introduce any evidence in support of the contention of the appellees, and unnecessary to introduce the order of attachment

or to prove its issual and levy by the records themselves or otherwise. There was no issue as to the contents of the return of the officer upon the attachment.

There was no evidence offered or heard upon the issue as to whether or not the attachment was issued and levied without good cause. The appellees seem to have relied upon the order of the court dismissing the suit in which the attachment was obtained and discharging the attachment as being a final and valid judgment in the case, concluding the estate of the decedent and the appellees, finally, upon the question as to whether the attachment was issued and levied without good cause, and that seems to have been the view taken by the court, below. If such conclusion was correct, then it follows that the appellants having admitted in their answer that the court, in which the suit and attachment were pending, by an order made, after the time in which a revivor could be had, and no revivor having been had of the suit in the name of the appellants as personal representatives of the decedent, dismissed the suit and discharged the attachment, it was unnecessary for appellees, in order to sustain their contention, to show by proof upon the trial of the case, at bar, that the attachment was obtained and levied without good cause, and appellants could not show by proof that there was good cause for obtaining the attachment, as the matter had already been determined adversely to them. It will be remembered that the petition affirmatively alleged that the suit in which the attachment was issued and levied, was, by an order of the court, thereafter dismissed, and the attachment, by an order of the court, at the same time, discharged. The answer does not controvert these averments, but specifically admits the truth of them, but avers that the decedent, who was the plaintiff in the suit, died on September 29th, 1911, while the suit was pending; that appellants were appointed and qualified as his personal representatives on October 8th, 1911; and that the suit was dismissed by an order of the court after the expiration of one year, after the time upon which appellants could have had same revived in their name, and that its dismissal arose from the fact, that it had not been revived, at that time, by either party. The allegations of the appellants as to why the suit was dismissed and the attachment discharged are not controverted.

Hence it becomes necessary to determine what effect should be given to the order of the court dismissing the suit and discharging the attachment, and what effect should be given to the order of the court striking an action from the docket, as to an attachment, which had been obtained in such a suit, where the suit is stricken because of the failure of the decedent's representative to cause it to be revived within the time provided by law for such revivor.

The principle which holds that a judgment which is rendered by a court having jurisdiction of the subject matter, and the parties, unless reversed or set aside or annulled in some proper proceeding, is immune from collateral attack by parties and their privies, who would assail it for want of validity or binding effect, is too well established for controversy. Dorsey v. Kendall, 8 Bush, 294; McElvoy v. Speed, 4 Bibb, 85; Paul v. Smith, 82 Ky., 45; Dupuy v. Johnson, 1 Bibb, 565; Smith v. Mitchell, 1 J. J. M., 272; Hampton v. Dudley, 1 J. J. M., 275; Cameron v. Bell, 2 Dana, 328; Venable v. McDonald, 4 Dana, 336; Talbott v. Todd, 5 Dana, 93; Kaye v. Kean, 18 B. M., 847; Spaulding v. Wathan, 7 Bush, 664; Dawson v. Litsey, 10 Bush, 412; Clark v. Rodes, 12 Bush, 15, and many other adjudications of this court. This rule applies with as much potency to a judgment dismissing the cause as to any other kind of a judgment.

However, if a judicial tribunal has no jurisdiction over the subject matter of litigation, its proceedings are absolutely void, but where, if the cause is one which is within the jurisdiction of the court, if there is error in the proceedings or judgment, then the judgment is voidable only, and the remedy to cure the error is by appeal. Singleton v. Cogar, 7 Dana, 480; Benningfield v. Reed, 2 B. M., 102.

To assail the judgment dismissing the action in which the attachment was issued, in the case at bar, could not be otherwise than a collateral attack. To be otherwise than a collateral attack, it would require an action, or motion, or other valid proceeding provided by the Code for the very purpose of overturning, setting aside or annulling the judgment. No inquiry can be made into the validity of a judgment or of its regularity, even in a proceeding to enforce the satisfaction of the judgment. Rogers v. Rogers, 15 B. M., 364; Couchman v. Bush, 83 S. W., 1136. Hence it follows that where a judgment is

a part of the evidence upon which a party bases his claim it is immune from collateral attack as to its validity, regularity, or binding effect, as between the parties and their privies.

It might be contended that the rule, above stated, as to the validity and binding effect of proceedings in court, does not apply to the determination of the question under discussion, here; that the court, at the time the order discharging the attachment was made, did not have jurisdiction of the parties to the action; that it did not have jurisdiction of the plaintiff in the case, because he was then dead and the action had never been revived in the name of his personal representatives, who are the appellants here. Section 509, of the Civil Code, provides that an action of a deceased plaintiff may be revived in the name of his representatives forthwith, but shall not be revived without the consent of the defendant after the expiration of one year from the time the order of revivor might have been first made, except in certain instances, none of which existed in the case, at bar. Section 510, of the Civil Code, provides, that if it appears to the court, by affidavit, that either party has been dead so long that the action can not be revived in the name of his representative or successor without the consent of both parties, it shall order the action to be stricken from the docket. Section 260, of the Civil Code, provides that if judgment in an action be rendered for the defendant, any attachment obtained against him in the action shall be discharged, and Section 228, of the Civil Code, provides that when the judgment in the case shall be for the defendant, the property attached or the proceeds of it shall be returned to him. It will not be seriously contended that the dismissal of an action, in which a recovery is sought and an attachment obtained and levied, would not have the same effect as to the discharge of the attachment as an order of the court expressly discharging the attachment. An attachment cannot remain in force without a pending action to sustain it. The dismissal of an action, in which an attachment has been obtained and levied to secure the payment of the recovery sought, would be, in effect, an adjudication that the cause of action did not exist, and hence the attachment wrongfully obtained. This is a self evident proposition. It was the duty of the appellants, if the deceased had a valid cause of action and an attachment

with good cause, to have the action revived in their names, as they were given, by the law one year, from the first court after their qualification, in which the revivor could be made, to have it done. They were aware of the pendency of the action, because the proof shows that they took the tobacco and disposed of it. The court had jurisdiction of the subject matter of the action and the appellants are the privies of the decedent, who was the plaintiff in that action. The Code expressly confers upon the court in which an action is pending and in which an attachment has been obtained and the plaintiff dies, and his personal representatives fail to have the action revived within one year from when they might have done so, to strike the action from the docket. When the court, in the exercise of its jurisdiction under the provisions of the Code, strikes an action from the docket, in which an attachment has been obtained and levied, because the personal representatives of the decedent plaintiff have failed to have the action revived in their names within the time provided by law, it is an adjudication that the attachment was sued out without good cause, and the parties to the action and their privies are bound by the order. The order of the court dismissing the action and discharging the attachment, in the state of case mentioned, while it might be said to be beyond the authority granted to the court by the provisions of the Civil Code, its action would not be void, but would have the same effect as an order, in the language of the Code, striking the case from the docket. Its action could not be collaterally attacked by either of the parties or their privies. Hence it follows that the court did not err in sustaining the motion to strike from the answer the averment that the action of the court in dismissing the action and discharging the attachment was void, and it, also, follows that the judgment of the court being a determination between the parties that the attachment was without good cause, it was unnecessary for the appellees to sustain their contention that the attachment was issued and levied without good cause, by proof, and the motion for a direct verdict by the appellants was properly overruled.

The court, in substance, instructed the jury to find for the appellees the value of the corn and the value of one-half of the tobacco seized under the attachment, at the time and place of its levy, not to exceed $450.00 for the tobacco and $50.00 for the corn. The appellants in-

sist that this was error, and, that in place of it, the instruction offered by them should have been given. The instruction offered by appellants and refused by the court directed the jury to find for the appellees the value of the corn and tobacco, less the necessary expenses of cutting, stripping, bulking, putting it in hogsheads, and delivering it at Bloomfield, and one-half of the necessary expenses of delivering it to Louisville and selling it. The appellants, also, offered an instruction to the effect, that if the jury believed from the evidence that the contract between decedent and appellees was that appellees were to pay all the expenses in the cultivation and handling of the tobacco, and cutting same and putting it in the depot at Bloomfield for shipment, then it should deduct from the value of appellees' tobacco the amount paid by the decedent or his estate for the handling, hauling, and cutting the tobacco and delivering it to the depot at Bloomfield. This instruction was, also, refused.

The instructions offered by appellants were properly refused. There was no evidence conducing to show that decedent expended anything in the necessary work of cultivating, cutting, or handling the tobacco which was levied on, or putting same in the barn where it was levied on, before it was seized under the attachment. There was evidence tending to show that, by the terms of the contract, the appellees were to handle the tobacco and prepare it for market and deliver it to the depot at Bloomfield and bear one-half of the expenses of shipping it to Louisville and selling it. It was, however, wrongfully seized under the attachment and the control of it taken from the appellees and they were not permitted to carry out their contract, if such was the contract. The appellants converted all of the tobacco to their own use and appropriated all of the proceeds. When one converts personal property to his own use, his title to the property, where damages are assessed against him for the conversion, relates back to the time of the conversion. The criterion of damages for the conversion of personal property is the reasonable market value of the property at the time of the conversion with interest thereon from the time of the conversion. Freeman v. Luckett, 2 J. J. M., 390; Daniel v. Holland, 4 J. J. M., 18; Justice v. Mendell, 14 B. M., 12; 13 Cyc., 170. The court permitted the jury to hear and consider the evidence relating to

the duties of the appellees in regard to stripping and putting the tobacco in hogsheads, and hauling it to Bloomfield, and the necessary expenses incurred by the administrators in having this work done, and it was necessarily considered by the jury in fixing the value of the tobacco, at the time it was seized under the attachment. The appellants took the tobacco, at its value, in the condition it then was and not at its value after it had been stripped and prized and delivered at Bloomfield. This is not a similar state of case to where, under a contract between landlord and tenant, the tenant fails or refuses to comply with his contract in the cultivation or preparation of the crop for the market, and the landlord is obliged to intervene and make expenditures to save or market the crop, still conceding to the tenant the ownership of a part of the crop and entitled to a division of the proceeds. The proceedings of decedent and his representatives were, in effect, a wrongful conversion of the appellees' property, and the measure of damages was its reasonable market value at the time of the levy of the attachment, with interest thereon from the time of the conversion.

The action of the court in sustaining the demurrer to so much of the third paragraph of the answer as alleged that at the time decedent sued out the attachment, he had a lien upon the corn and tobacco to secure the payment of the advancements made by him to the appellees was not prejudicial. The appellants did not claim in their answer any lien upon the proceeds of the corn and tobacco by reason of the advancements made by him nor any sum for which they had a lien; neither did they seek any relief on account of their alleged lien. The statement in regard to the lien seems to have been an argument used to combat the allegation that the attachment was issued without good cause.

The action of the court in rendering a judgment for appellees in twice the amount found by the jury can not be sustained. The authority for the action mentioned is found in Section 2312, Kentucky Statutes. It is as follows:

"If property be distrained for any rent not due, or attached for any rent not due or accruing, or taken under any attachment sued out without good cause, the owner of such property may, in an action against the party suing out the warrant of distress or the attach-

ment, recover double damages for the wrongful seizure, and if the property be sold, for double the value thereof.''

Now, the property was never sold under the attachment. An order was obtained from the judge of the county court to sell the corn, but it does not appear ever to have been executed.

The statute is highly penal in its character. The law never favors penalties. A statute so highly penal in its character, in its application, will not be extended beyond the letter of its terms. It does not provide that double the value of the property may be recovered, unless there is a sale of it. This means a sale under the attachment, and in accordance with the provisions of law. The fact that the statute provides the recovery of double damages for the seizure of the property, and double its value, if it be sold, clearly indicates that double its value may not be recovered under the guise of damages for the seizure, because double the value of the property is only recoverable in the event of a sale. It is manifest that the damages contemplated by the statute for the seizure of the property, and for which double damages may be recovered, must consist of something, other than the value of the property, or else, the legislative authority would not have so worded the statute. The damages, in the case at bar, consist of nothing save the value of the property. The property was never sold, as contemplated by the statute. Hence, the court was without authority to adjudge a recovery of double its value for appellees. Each of the parties below treated the value of the property as the full measure of all the damages, and the only damages recoverable, since each asked an instruction so fixing the damages and the court so instructed the jury. The only damages sought in the petition was the value of the property. While the appellees relied upon the statute, their petition stated a good cause of action at common law, and while the facts did not constitute a case, wherein they were entitled to recover double damages under the statute, they were entitled to recover the damages actually suffered, and the court should have rendered a judgment in their favor for the amount of the value of the property, in accordance with the verdict of the jury, with interest thereon from the time of the seizure.

It is therefore ordered that the judgment be reversed, and the cause remanded with directions to the

court below to set aside the judgment, and instead, to render a judgment in favor of appellees against appellants for the sum of $400.00, with interest thereon at six per cent per annum from January 10th, 1911, until paid, and appellees' costs in the court below.